35 C.C.P.A. (Patents)

Application of McNAMARA et al.
Patent Appeals No. 5422.

Court of Customs and Patent Appeals.
March 2, 1948.

Rehearing Denied April 14, 1948.

William H. Abbott, of St. Paul, Minn. (Carpenter, Abbott, Coulter & Kinney, of St. Paul, Minn., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

JACKSON, Associate Judge.

The Primary Examiner finally rejected claims 2, 3, 9; 10, and 13 to 17, inclusive, of appellants' application, serial No. 480,-520, filed March 25, 1943, for a patent "For Abrasive Sheets and Belts," as unpatentable over the prior art. The Board of Appeals of the United States Patent Office, in its decision, affirmed the action of the examiner and from that decision this appeal was taken. The appeal as to claims 2, 9, 14, 16 and 17 was withdrawn in appellants' brief, which leaves claims 3, 10, 13, and 15 for our consideration. Three claims were allowed.

The following references were cited: Carlton, 1,775,631, September 16, 1930; Klingspor, 1,833,715, November 24, 1931; Courtney, 2,124,055, July 19, 1938; Bartling, 2,186,001, January 9, 1940; Carlton et al., 2,230,934, February 4, 1941.

The involved claims read as follows:

"3. A flexible abrasive. article of the coated abrasive type comprising a strong woven fibrous material; an impregnating or presizing coat for said fibrous material which comprises a film-forming elastic waterproof adhesive material comprising a cross-linked resin polymer; a water-proof synthetic grit-bonding coat joined to the impregnated sheet or backing aforesaid; and a multiplicity of abrasive particles embedded in said grit-bonding coat; said grit-bonding coat being less flexible and very substantially harder than said impregnating or sizing coat.

"10. In the production of abrasive articles of the coated abrasive type, that improvement which comprises treating a porous hydrophilic backing sheet with an aqueous dispersion of a synthetic resin, produced by polymerization of monomeric material in aqueous dispersion, applying a grit-bonding coat to a surface of the thus treated backing, and coating a layer of abrasive grains on said bonding coat, so that they become partially embedded and bonded therein, said grit-bonding coat being very substantially harder than the said impregnating coat of the finished abrasive article.

"13. An abrasive belt adapted to be used wet in the abrading or polishing of

glass, steel and the like comprising a porous backing sheet impregnated or sized with a coating comprising an elastic synthetic resin which is of the thermoplastic type but has a melting point much above room temperatures and has a molecular weight of at least several thousand; a grit-bonding coat which is non-thermoplastic and is very much harder than the aforesaid impregnating or sizing coat; and a layer of abrasive grits over said grit-bonding coat and bonded and anchored thereby.

"15. An abrasive article of the coated abrasive type having a porous absorbent backing impregnated or sized with a continuous dried film of an aqueous dispersion of a resinous material, said film comprising a synthetic elastic resin produced from monomeric materials by emulsion polymerization, and a layer of abrasive grains bonded to said impregnated backing with a bonding coat comprising a heat-convertible synthetic resin, said grit-bonding coat being very substantially harder than said impregnating or sizing coat."

As may be observed from the claims, the application discloses an article of the coated abrasive type in which a porous backing sheet is impregnated with a sizing coat comprising an aqueous emulsion or dispersion of synthetic resin, a drying of the coated sheet, and the application of a phenolaldehyde grit-bonding coat in which are anchored abrasive grits. The grit-bonding coat is harder and less flexible than the sizing coat.

The patent to Carlton relates to an abrasive article, such as sand paper, and method of making the same wherein certain resinous material is used, particularly synthetic resins such as phenol-formaldehyde condensation products, as a binder. Abrasive grits are fastened in the binder. It appears in the specification that one of the principal objects of the invention is the making of an abrasive article with a binder of a desired degree of flexibility. The binder is said to be characterized by extensibility and compressibility so that it will conform to the flexion of its base without permanent distortion or deleterious disintegration. The binder is characterized by great tensile strength and resistance to shearing stresses. It is stated to be very adhesive and tenacious and also non-hygroscopic, moisture resistant, and penetrative on a penetrable base, forming a strong union therewith, and resistant to solvents usually encountered in abrading operations. It is said that the flexibility of the article may be varied by heat treatment after the application of the binder and grit.

The Klingspor reference relates to waterproof polishing paper and discloses a grit-grinding agent secured to a backing sheet base by a binding agent, such as animal glue or the like. The glue is then hardened by liquid condensation products of phenol or the like with formaldehyde or the like which are mixable with solvents. The animal glue is first dissolved or soaked in water, then mixed with the condensation products at a temperature not over 75° C. to avoid premature hardening of the glue. That mixture is then applied as a coating to the paper or other carrier and the grinding material applied to the surface. If paper is used as a base, it is preferably impregnated with linseed oil and dried.

The patent to Courtney relates to an abrasive article such as sandpaper and is said to be particularly directed to a method and product involving an improved bonding medium for attaching abrasive grains to a fibrous base. It is stated in the specification that there were disadvantages involved in the use of varnishes made of drying oils, raw or modified, and either with or without natural or synthetic resins, or of resins alone dissolved in suitable solvents in the bonding of abrasive particles to fibrous bases such as paper, cloth and the like. It is said that in that procedure it is essential that the bonding coat should not penetrate too deeply into the base of the article if in the drying or baking of the varnish adhesive it results in a brittle article lacking both strength and shock resistance. It is further stated that, even if the dried varnish be flexible, it should not penetrate very deeply for reasons of economy in the use of the binding medium. The patent discloses that the bond which contains the abrasive material is ap-

plied to the backing sheet in the form of an emulsion.

The Bartling patent is for a flexible abrasive sheet material such as sandpaper, including that of the waterproof variety. It discloses an article made with a paper backing and a bond coat holding the abrasive grits, and chemically treated so that the finished sheet is insoluble in water. The article contains what is called a barrier coating which is applied to the backing member into which it penetrates to some degree. The bond coat is applied on the barrier coat, which appears to penetrate the bonding coat securely cementing the abrasive elements. The patentee seeks to produce pliability in his finished sheet by the use of materials such as gelatine, which will penetrate into and impregnate the backing material to some extent.

The Carlton et al. patent relates to stable, waterproof, flexible sandpaper and the process of manufacturing the same. It discloses a flexible backing which first has a sizing coat applied thereto upon which is placed the bonding coat containing the abrasive material.

The Primary Examiner rejected the involved claims as unpatentable over any one of the patents to Carlton et al., Bartling, or Klingspor, in view of the patent to Courtney, stating that no invention was seen in the use of the emulsion disclosed in the Courtney patent as the preliminary bond in the abrasive device of those patents. He noted that in the patent to Carlton, the practice of controlling the hardness of the bonding and sizing coat is disclosed, and so for that reason saw no invention in the control of relative hardness in the bonding and sizing coats of any of the devices of the patents. He stated that the setting or drying of the sizing coat before applying the bond coat is illustrated in the patent to Carlton et al. With respect to claim 13 he noted that abrasive belts are commonly made from strips of abrasive and their ends joined together.

The Board of Appeals in its decision pointed out that appellants and the patentee, Courtney, recognized that it was old in the art to impregnate a porous backing with resinous material dissolved in a solvent and that both appellees and Courtney proposed, instead of dissolving resinous material in a solvent, to use resinous material emulsified in water or other nonsolvent. The board stated that Courtney desired most of his resinous material to remain on the surface of the sheet, while appellees desired thorough impregnation of the backing sheet. The board then observed that in the Courtney structure there must be some penetration of the resinous material into the backing sheet for, if this were not so, the coating would not adhere thereto. It further pointed out that the coating of the backing sheet in the Courtney structure also served as the grit-bonding coat, whereas appellants, instead of using the impregnated sheet for the purpose of bonding the grits, applies a special coating for that purpose.

The board held that the references disclose it to be old in the art to provide for a special grit-bonding coat on an impregnated backing sheet, and that the question of patentability with respect to the involved claims hinged on whether or not it would involve invention to use the emulsion disclosed in the Courtney patent to impregnate the backing sheet when, as in the application, a separate grit-bonding coat is employed. The board concluded that those skilled in the art would recognize that the emulsion of the Courtney patent could be used to impregnate the porous backing sheet, and that no invention would be involved in so doing, where an impregnated backing sheet with a separate grit bonding coat was desired.

In a subsequent decision of the board based on appellants' request for reconsideration, the board stated that the presently involved claims (to which the request for reconsideration was solely directed) include resinous materials in such a broad fashion as to cover materials shown by the cited prior art to have been used as constituents of abrasive articles, and that no invention was seen to be involved by reason of the Courtney patent in applying those materials to a backing sheet in an aqueous emulsion or dispersion. It concluded that those claims are not sufficient-

ly specific as to the resinous materials so as to distinguish them from the materials disclosed in the prior art.

Appellants, in their said request for reconsideration of the board's decision, pointed out what they claimed to be the limitations in the involved claims upon which they predicated patentability thereof as follows:

Claim 3 specifies an impregnating coat for the backing "which comprises a film-forming elastic water-proof adhesive material comprising a cross-linked resin polymer."

Claim 10 defines the impregnant as "an aqueous dispersion of a synthetic resin, produced by polymerization of monomeric material in an aqueous dispersion."

Claim 13 defines the impregnant as "comprising an elastic synthetic resin which is of the thermo-plastic type but has a melting point much above room temperatures and has a molecular weight of at least several thousands."

Claim 15 defines it as "a continuous dried film of an aqueous dispersion of a resinous material, said film comprising a synthetic elastic resin produced from monomeric materials by emulsion polymerization."

Those contentions are the same, but in extended form, in appellants' brief before us.

The sole issue is whether or not the claims on appeal are sufficient to define invention over the references.

The combination of a porous or fibrous backing of a presizing coating, and a bonding coating containing a layer of abrasive grains is old as disclosed by the Klingspor, Bartling, and Carlton et al. patents. Therefore, it would appear that the limitations in the involved claims upon which patentability is said to reside are in the kind of presizing or impregnating coat and the extent to which it penetrates the backing sheet, as is shown in the claims.

There can be no question but that the device disclosed in the Carlton et al. patent contains each of the limitations contained in claim 3, except that the film-forming,

elastic, waterproof, adhesive material does not comprise a cross-linked polymer. It is also clear that, since the entire article of the Carlton et al. patent is flexible, both of its coats are flexible. We do not think that the relative hardness between the two coats, as set out in the claims, involves invention for the reason that the control of hardness in plastics is old, as disclosed in the Carlton reference. Obviously the coating which the grits are bonded should be tough and hard.

The resins of the Carlton et al. patents may be polymers of the condensation type, but they are not cross-linked. The examples that are preferred in the specification of appellants disclose some polymers which are cross-linked and others which are not, as pointed out by the solicitor in his brief, and this has not been controverted by appellants. In any event we do not see that by the use of polymers as contrasted with unpolymerized materials, that there is anything here to show an unexpected result. It is admitted in appellants' application that the use of thermo-plastics in the involved art is well known.

Claim 10 is in method form and differs somewhat from claim 3 in that it states that the improvement in the abrasive art, "comprises treating a porous hydrophilic backing sheet with an aqueous dispersion of a synthetic resin, produced by polymerization of monomeric material in aqueous dispersion, * * *." The patent to Courtney discloses an aqueous dispersion of polymerized synthetic resin which serves to coat the backing and also bonds the grits to the backing, and we see nothing in the record which indicates that the presizing coating of appellants would be superior to the presizing layer shown in the Carlton et al., Bartling, or Klingspor patents. It is clear to us that it would not require invention merely to use an emulsion or dispersion as a presizing coat in those patents.

It is true, as pointed out by appellants, that the sizing coat of the Courtney patent does not completely impregnate the backing of his article. It is also true that the polymers shown in appellants' application are formed during or after emulsification,

whereas the polymers of the Carlton patent occur before emulsifying. However, we find nothing in the record to indicate that emulsion polymerization results in a materially different or superior abrasive article.

Appellants argue vigorously in their briefs that the complete impregnation of their backing sheet should lend patentability to their claims. We do not think such argument is supported by the application in which it is stated that the backing may be either coated or impregnated. Therefore, it would seem that coating or impregnating the backing sheet with appellants' synthetic substance would be equally effective. It will be noticed that claim 10, which merely calls for "treating" the backing sheet, could involve any treatment, either by complete impregnation, an adhesive coating, or a very slight penetration.

■ Both claims 13 and 15 require that the backing "be impregnated or sized." We can not agree to appellants' contention that such language limits the claim to an impregnation. The plain meaning of sizing is to cover or glaze the surface of an article. That is the common meaning of the term as defined by all the lexicographers. Therefore, it appears that to cover or glaze the surface of an article or material with a sizing is utterly different than to impregnate the article.

There can be no question but that the coating disclosed in the Courtney patent must penetrate the backing to some extent, and whether the penetration amounts to impregnation or not is merely a matter of degree.

The statement in claim 13, that the resin comprising the sizing coat "has a molecular weight of at least several thousand"; in the absence of any showing to the contrary, is not critical. The same reasoning is applicable to the statement in claim 15 that the elastic resin is produced from monomeric materials by emulsion polymerization.

■ We find nothing in the record to show that the product and process of appellants, as defined in the involved claims, is better in any respect than those in the cited references and it appears to us that the materials proposed to be used in those claims and the degree of penetration involve nothing more than choice. We agree with the solicitor in his statement that, "If the materials used produce unexpectedly superior results, this fact should be established by evidence and not left to conjecture."

■ Considering the withdrawal of the appeal as to claims 2, 9, 14, 16, and 17 as equivalent to a motion to dismiss, the motion is granted and the appeal as to those claims is dismissed. The decision of the board as to claims 3, 10, 13, and 15 is affirmed.

Affirmed.

By reason of illness, O'CONNELL, Judge, was not present at the argument of this case and did not participate in the decision.